

**FILED & ENTERED**

**JUL 10 2026**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY evangeli  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Gabriel David Guerrero,<br>Olivia Luna Guerrero,<br><br><br><br><br><br>Debtor(s), | Case No.: 2:25-bk-14063-BB<br><br>Chapter: 7<br><br>Adversary No.: 2:26-ap-01172-BB |
| Gabriel David Guerrero, Olivia Luna<br>Guerrero,<br><br>Plaintiff(s),<br><br>vs.<br><br>Jeff Scott Aronson,  Olympia Financial<br>Mortgage, Inc,  Sunflower Equity, LLC,<br>Timothy Yoo,<br><br>Defendant(s). | **MEMORANDUM DECISION AND ORDER DENYING PLAINTIFFS' EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>(No hearing required) |

Before the Court is the emergency motion of plaintiffs Gabriel David Guerrero and Olivia Luna Guerrero (jointly, "Plaintiffs") for a temporary restraining order and preliminary injunction pursuant to Fed. R. Bankr. Proc. 7065 and Local Bankruptcy Rule 9075-1(a) (the "Motion"),

- 1

filed concurrently with their Adversary Complaint on July 8, 2026. Plaintiffs seek to enjoin Defendant Sunflower Equity, LLC ("Sunflower") and any trustee, agent, or assign acting on its behalf from conducting a foreclosure sale of the real property located at 1373 El Mirador Drive, Pasadena, CA 91103 (the "Property") -- which sale Plaintiffs claim is scheduled for July 8, 2026.

Plaintiffs assert that they are likely to succeed on the merits of their claims that a $2,200,000 loan originated by Sunflower in March 2022 is void under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., and the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639. They argue that specific loan terms—including a 24% default interest rate, 10% late fees, a balloon payment, and a prepayment penalty—are *void ab initio* under HOEPA's categorical prohibitions, not merely voidable.

Sunflower contends, on the other hand (in an opposition filed July 9, 2026), among other things, that the claims asserted by Plaintiffs are barred by the applicable statutes of limitations and were released as part of an August, 2024 settlement agreement executed prepetition in connection with state court litigation that plaintiff Gabriel Guerrero ("Gabriel") brought on identical grounds.  Moreover, Sunflower contends that Plaintiffs have made materially false representations to this Court as to the need for this matter to be considered on an expedited basis -- that Plaintiffs are well aware that no foreclosure sale is currently scheduled for July 8, 2026, as confirmed in writing by the foreclosure trustee on July 1 and July 2, 2026, and that Sunflower will be required by California law to give Plaintiffs not less than 21 days' notice of any new foreclosure sale date.

For the reasons set forth below, the Court finds that Plaintiffs have failed to establish the requisite elements for injunctive relief under Federal Rule of Civil Procedure 65, made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7065, let alone injunctive relief on an emergency basis. The Court finds further that threshold jurisdictional deficiencies preclude this Court from granting the requested relief.  Accordingly, Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction is DENIED.

## I

## PROCEDURAL HISTORY

Plaintiffs Gabriel David Guerrero and Olivia Luna Guerrero filed a voluntary Chapter 11 bankruptcy petition on May 15, 2025.  Sunflower first moved for relief from the automatic stay with regard to the Property on July 29, 2025.  The Court continued the hearing on that motion numerous times to give the Plaintiffs/Debtors a meaningful opportunity to sell or refinance the Property or otherwise to reorganize their financial affairs.

On January 21, 2026, citing a lack of meaningful progress toward a reorganization, the Court issued its Order to Show Cause re Conversion or the Appointment of a Chapter 11 Trustee (the "OSC") [Docket No. 78].  Following the February 24, 2026, hearing on the OSC, on March 4, 2026, the Court entered an order directing the United States Trustee to appoint a chapter 11 trustee in the above case (the "Case") [Docket No. 91].  Timothy J. Yoo accepted the appointment and became the chapter 11 trustee (the "Trustee") in the Case on March 17, 2026 [see Docket No. 117].

On March 24, 2026, the Trustee requested that the Case be converted to a case under chapter 7 of the Bankruptcy Code.  In support of that request, the Trustee made the following representations:

1.  . . . . Since his appointment, the Trustee has reviewed the pleadings filed with the Court, obtained access and valued the Debtors' residence, and familiarized himself with the ancillary proceedings, including the criminal proceeding against Gabriel Guerrero and Olivia Guerrero's 2019 bankruptcy case.

2.  There is absolutely nothing to reorganize here. Further, there is no income to support any reorganization plan. According to the District Court Sentencing Judgment and Probation/Commitment Order entered in Case No. CR 24-588 PA, the sole income earner Gabriel is ordered to surrender himself to the Bureau of Prison on or before May 28, 2026 to serve a 24-month sentence.

3.  To make matters worse, this lack of income will result in more missed payments to the lienholder Sunflower Equity, LLC ("Sunflower") and reduction of equity available for creditors from the Debtors' residence located at 1373 El Mirador, Pasadena,

California 91103. According to Sunflower's relief from stay motion filed on July 29, 2025 [Doc 54], default interest has been accruing since November 2024.

4. Sunflower and judgment creditor Daniel Fitness support this case being converted to Chapter 7. There is no reason to incur additional expenses associated with Chapter 11 proceedings such as monthly operating reports and quarterly fees. Should the Debtors somehow find a lender to refinance the house (as they repeatedly stated in prior filings), a financing motion can be filed in the Chapter 7 proceeding with the Trustee's support as long as the available equity is allocated to the creditors.

Chapter 11 Trustee's Case Status Report and Request for Conversion to Chapter 7, Docket No. 111.

The Court granted the Trustee's request and, by order entered April 1, 2026 [Docket No. 117], converted the Case to chapter 7. The Trustee accepted an appointment as the chapter 7 trustee on April 6, 2026 [see Docket No. 120].

On April 21, 2026, Sunflower and the Trustee filed a Stipulation [Docket No. 132] (the "Stipulation"), which included the following terms:

14. Trustee has undertaken a professional investigation into the estimated value of the Property in order to respond to Movant's still pending Motion for Relief from Stay.

15. Trustee believes that based on a realistic value of the potential net sale price of the Property, along with the amount of Movant's lien secured by its first position deed of trust, the amount of the Debtors' claimed homestead exemption against the Property, and the amount of other liens against the Property, that the Bankruptcy Estate may not be able to realize sufficient proceeds from a sale of the Property to benefit the Bankruptcy Estate's unsecured creditors.

16. In order to resolve Movant's pending Motion for Relief from Stay without the need for depositions of experts and an evidentiary hearing on valuation, and to still allow the Trustee an opportunity to seek a sale that may provide sufficient proceeds from a sale to benefit the Bankruptcy Estate's other creditors, as well as to guarantee a minimum availability of such funds from a potential sale, the Parties have agreed to the following agreement which the Parties seek to have approved by this Court via this Joint

Stipulation. Namely that (1) Movant shall be granted relief from stay on their Relief from Stay Motion and with a waiver of the 14-day waiting period prescribed by FRBP 4001(a)(4); (2) Movant shall not proceed with a foreclosure sale for sixty (60) days after the date of entry of this Order; (3) Movant shall not proceed with a foreclosure sale if, within the next sixty (60) days after the date of entry of this Order, the Property is in escrow for a sale by the Trustee with a qualified buyer for a price that will generate sufficient net sales proceeds to pay off Movant's lien and deed of trust in full based upon the Sunflower Claim filed on September 30, 2025 (plus any accrued and ongoing interest, fees and costs) minus a one-time $100,000.00 carveout to the Bankruptcy Estate Trustee ("Proposed Sale"); and (4) If the Proposed Sale does not close escrow within 120 days from escrow being opened or if escrow is cancelled, Movant shall then be entitled to proceed with a foreclosure sale of the Property.

Joint Stipulation Between Chapter 7 Trustee and Movant for Order Granting Relief From Stay, Docket No. 132.

The Court approved the Stipulation by order entered April 22, 2026 [Docket No. 134] and entered an order granting Sunflower relief from stay, subject to the 60-day waiting period referenced above, on May 5, 2026 [Docket No. 139]. On June 5, 2026, the Trustee filed a notice of intention to abandon the Property [Docket No. 157]. In that notice, the Trustee represented that he had analyzed the Property and had determined that it was of inconsequential value and of no benefit to the estate. More specifically, the Trustee represented that,

[A] significant judgment lien by Timothy Hopkins and Graciela Hopkins was discovered by the Trustee, which makes administering the House impractical for the bankruptcy estate. However, the Debtors (with their ability to possibly avoid the judgment lien pursuant to Section 522), may be able to retain the House by refinancing. While there is no assurance that they will be able to successfully refinance, this abandonment allows them to try without the burden or interference by the bankruptcy

estate. Hence, the Trustee believes that the proposed abandonment of the Properties is in the best interests of the estate and its creditors.

Docket No. 157, p. 2 at lines 2-8.

On June 12, 2026, Plaintiffs filed an Emergency Ex Parte Motion in the main bankruptcy Case [Docket No. 159] seeking a temporary restraining order, a declaration that the Sunflower loan is illegal and void, reconversion to Chapter 11, and other relief. On June 15, 2026, this Court entered an order denying that motion in its entirety [Docket No. 162], holding that: (a) injunctive relief in bankruptcy court must be sought through an adversary proceeding under Federal Rule of Bankruptcy Procedure 7001(b), and a Rule 9014 contested-matter motion cannot be used to circumvent that requirement; (b) a declaration that a lien is void likewise requires an adversary proceeding under Rule 7001(b) and (i); and (c) because no adversary proceeding had been filed, the Court could not grant the requested relief "even if it were warranted on these facts." The Court did not reach the substantive merits of Plaintiffs' claims regarding the illegality of the Sunflower loan under TILA, HOEPA, RESPA, or California law.

On July 8, 2026, Plaintiffs filed the instant adversary proceeding (the "Action") and renewed their request for emergency injunctive relief in the form of the Motion now before the Court. Sunflower filed a brief opposition to the Motion on July 9, 2026.

## II

## FACTUAL BACKGROUND

### A.    The Loan Transaction

Plaintiffs and their six children have resided continuously at the Property since 2006. In or about early 2022, Gabriel sought a loan to fund a repurchase of the Property following a prior foreclosure. Jeff Scott Aronson, acting on behalf of Olympia Financial Mortgage, Inc. ("Olympia"), originated a loan through lender Sunflower.

The loan closed on March 4, 2022 for principal of $2,200,000, and, according to Plaintiffs, settlement charges of approximately $235,432 and origination fees exceeding $104,000. The Secured Note carried a stated interest rate of 8.49%, required twelve monthly interest-only payments of $15,565, and a balloon payment of $2,200,000 due April 1, 2023.

The loan documents included a 10% late fee, a 24% per annum default interest rate, monthly servicing fees of at least $5,500, and a prepayment premium equal to advance interest through October 1, 2022. The Secured Note and Deed of Trust both listed Gabriel's address as 1430 North Grove Avenue, Ontario, California (which was Gabriel's business address) although the collateral for the loan was the Property (Plaintiff's residence at 1373 El Mirador Drive in Pasadena).

Gabriel Guerrero alleges that Aronson directed him to use his business address on the loan documents, representing that the loan would not fund unless structured as a business-purpose transaction,[1] and promised to refinance the loan into a conventional consumer mortgage within six months. That refinancing never occurred. Plaintiffs allege that Olympia and Aronson received brokers' in connection with the loan of more than $114,295.93.

B.   Post-Origination Events

On February 13, 2024, Sunflower recorded a Notice of Default. [Exhibit "C" to the Motion.]  On May 6, 2024, Gabriel filed a verified complaint in Los Angeles Superior Court alleging TILA violations, breach of contract, breach of fiduciary duty, fraud, and wrongful foreclosure, Guerrero v. Olympia Financial Mortgage, Inc., et al., Los Angeles Superior Court Case No. 24 NNCV 01716.  [Exhibit "D" to the Motion.]

In August of 2024, Gabriel entered into a General Release and Settlement Agreement with Sunflower, Olympia, and Aronson. [Exhibit E to the Motion.]  The Settlement Agreement restructured payment terms, reduced the interest rate to 9.5%, and provided for conditional maturity extensions.  It also contained broad general releases, including a release of all claims "arising from or related to the Dispute, Loan or Property, and including, but not limited to, any and all claims that the Loan was a consumer loan, as well as for violation of the Truth In Lending Act, breach of contract, violation of the Rosenthal Fair Debt Collection Practices Act, breach of fiduciary duty, unfair competition and wrongful foreclosure" and Cal. Civ. Code section 1542 waivers.

---

[1] Sunflower contends that Gabriel represented that the Property was to be acquired for "investment purposes."

The settlement agreement also included the following language:

- On page 4 at paragraph (a)

   Each of the releasing parties represents and warrants that it alone is the owner of the Released Claims, that it has not heretofore assigned or transferred, nor purported to assign or transfer to any third party, and is not aware of any third party, who might assert some interest in any of the Released Claims; and

- On page 3 at paragraph (g)

   In the event of a default under the Loan, Plaintiff agrees not to seek bankruptcy protection to delay the foreclosure sale.  In the event that Plaintiff files bankruptcy contrary to the above agreement, Plaintiff hereby stipulates to immediate relief from any bankruptcy-related automatic stay on an ex parte basis.

Motion, at Exhibit E.  Olivia Luna Guerrero was not an obligor with regard to the Sunflower loan and did not sign the Settlement Agreement.

   C.    The Alleged Emergency

Plaintiffs' Motion asserts that a foreclosure sale of the Property is scheduled for July 8, 2026, and that, absent emergency relief, the sale will proceed before the claims asserted in the Adversary Complaint can be heard. Sunflower's Opposition establishes, however, that on July 1, 2026, Sid Richman, President of Best Alliance Foreclosure and Lien Services Corp. (the foreclosure trustee for Sunflower), confirmed in writing to Gabriel and his counsel Roger Golden that the pending trustee's sale had been cancelled and that no foreclosure sale was pending for July 8, 2026.  Mr. Richman confirmed this again in an email of July 2, 2026, sent at 1:17 p.m., stating: "there is no sale scheduled for July 8," and "if a new date of sale is to be scheduled you will receive the required proper notice." Gabriel responded to Mr. Richman's email, copying Sunflower's counsel, stating, "Thank you, Sid."  On July 2, 2026, at 2:04 p.m., Mr. Golden sent an email to Sunflower's counsel seeking to confirm the same. At 2:19 p.m. on July 2, 2026, counsel for Sunflower responded in an email:  "As stated by Mr. Richman, there

is not currently a scheduled sale date." Therefore, there is currently no foreclosure sale scheduled, and Plaintiffs were aware of this fact at the time they filed the Motion on July 8, 2026.

## III

## LEGAL STANDARD

A party seeking a temporary restraining order or preliminary injunction must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that an injunction is in the public interest. Winter v. NRDC, Inc., 555 U.S. 7 (2008).  These four factors are not mere prerequisites but "interrelated considerations that must be balanced together." Id. The first two factors—likelihood of success and irreparable harm—operate as "gateway factors" that must be satisfied before a court weighs the remaining considerations. Erie Indem. Co. v. Stephenson, 157 F.4th 265 (2025).  Failure to establish either precludes preliminary relief. Id.  A preliminary injunction is an extraordinary equitable remedy that is never awarded as of right. Its purpose is merely to preserve the relative positions of the parties until a trial on the merits can be held. Starbucks Corp. v. McKinney, 602 U.S. 339 (2024).

Federal Rule of Bankruptcy Procedure 7065 makes Federal Rule of Civil Procedure 65 applicable to adversary proceedings. When issuing a preliminary injunction pursuant to the bankruptcy court's equitable powers under 11 U.S.C. § 105(a), a bankruptcy court must consider the traditional Rule 65 factors: likelihood of success on the merits, likelihood of irreparable harm, harm to others if the injunction is granted, and whether the injunction serves the public interest.

## IV

## THRESHOLD JURISDICTIONAL ISSUES

Before reaching the merits of Plaintiffs' request for emergency injunctive relief, the Court must address two threshold jurisdictional issues that independently preclude the relief

requested: (1) whether Plaintiffs have standing to prosecute the causes of action asserted in the Adversary Complaint while those causes of action remain property of the bankruptcy estate; and (2) whether this Court retains subject matter jurisdiction over those causes of action following the Trustee's abandonment of the Property.

The filing of a bankruptcy petition creates an estate comprising "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Causes of action that belong to the debtor at the time of filing become property of the estate and, in a Chapter 7 case, are administered exclusively by the trustee for the benefit of creditors. A debtor lacks standing to prosecute causes of action that are property of the estate unless and until the trustee abandons them.

The claims asserted in the Adversary Complaint—TILA violations, HOEPA violations, RESPA violations, fraud, breach of fiduciary duty, breach of contract, wrongful foreclosure, and related state-law claims—are all causes of action that existed as of the petition date and therefore belong to the bankruptcy estate.

The Trustee's June 5, 2026 Notice of Intent to Abandon identifies the Property as being of "inconsequential value to the estate" due to a judgment lien held by Timothy Hopkins and Graciela Hopkins, but expressly notes that Plaintiffs "may be able to retain the House by refinancing" through lien avoidance under 11 U.S.C. § 522(f), and that abandonment "allows them to try without the burden or interference by the bankruptcy estate." Critically, the Trustee's notice addresses abandonment of the *Property*—the real estate itself—not abandonment of the causes of action Plaintiffs now seek to prosecute.  Causes of action are distinct items of property under § 541(a)(1). The Trustee's abandonment of real property does not automatically abandon related causes of action that could generate value for the estate.[2]

---

[2] Plaintiffs' counsel Roger N. Golden represents in his declaration that "a successful prosecution of Plaintiffs' claims would reduce Sunflower's enforceable claim from approximately $3,100,000 to approximately $2,200,000 or less," and that "[t]he excision of the void default interest alone increases the equity available to the creditors of the estate by more than $500,000." He opines further that "[i]f Plaintiffs' right of rescission is granted and their statutory damages are offset against the remaining principal, Sunflower's enforceable claim could be reduced potentially to zero." These representations establish that the causes of action Plaintiffs seek to prosecute are not of "inconsequential value" to the estate. To the contrary, at least in Plaintiffs' view, they are potentially worth hundreds of thousands of dollars—or more—to the estate's creditors.

Either the Trustee's abandonment of the Property effectuated an abandonment of the claims that Plaintiffs seek to prosecute in the Action or it did not.  If it did not, Plaintiffs lack standing to prosecute these claims unless and until the Trustee abandons them. This standing deficiency alone is fatal to the Motion. A party lacking standing to prosecute the underlying claims cannot establish a "likelihood of success on the merits" of those claims, which is a gateway factor that must be satisfied before this Court may grant preliminary injunctive relief.

If, on the other hand, the Trustee's abandonment of the Property *did* operate as an abandonment of the claims, or if the Trustee subsequently abandons these claims, a different jurisdictional issue arises: whether this Court retains subject matter jurisdiction over the abandoned claims.

Bankruptcy courts are courts of limited jurisdiction.  Plaintiffs' claims do not "arise under" or "arise in" the Case or under the Bankruptcy Code. They arise under state or federal nonbankruptcy law and came into existence (if they ever existed at all) long before the Case was filed.  They are therefore unlikely to qualify as "core" proceedings.[3]

And, following an abandonment by the Trustee, it is difficult to see how these claims would fall within the Bankruptcy Court's "related to" jurisdiction under title 11. 28 U.S.C. § 1334(b). A proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." The standard is whether the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, and which in any way impacts upon the handling and administration of the bankruptcy estate.  Once the Trustee abandons property, however, that property revests in the debtor and ceases to be property of the estate. 11 U.S.C. § 554(c). Causes of action that are abandoned by the trustee similarly revest in the debtor and are no longer administered for the benefit of creditors.

Here, the causes of action Plaintiffs seek to prosecute are designed to void or substantially reduce Sunflower's secured claim and to recover damages from Olympia and

---

[3] And if Sunflower elects to proceed by conducting a nonjudicial foreclosure, under California law, it will have waived the right to assert any deficiency claim against the estate. Thus, Plaintiffs' claims would not qualify as statutorily core claims under 28 U.S.C. section 157(b)(2)(C) that must be treated as related claims under <u>Stern v. Marshall</u>.

Aronson. If the Trustee has already abandoned the Property as of "inconsequential value," and if he subsequently abandons these causes of action, any recovery Plaintiffs obtain would belong to them personally, not to the estate. The outcome of this adversary proceeding would have no effect on estate administration, creditor distributions, or the handling of estate assets. The claims would be purely personal to the Plaintiffs.  Under these circumstances, the requisite nexus to the bankruptcy estate necessary to establish "related to" jurisdiction under § 1334(b) would be absent. This Court would lack subject matter jurisdiction, and the matter would belong in state court or, if federal question jurisdiction exists, in the United States District Court.

Plaintiffs have not addressed either of these jurisdictional issues in their Motion or supporting papers. They have not shown that the claims that they seek to prosecute have been abandoned by the Trustee and have not explained how, if such abandonment occurs, this Court could retain jurisdiction over abandoned causes of action that generate no benefit to the estate and affect no creditor's rights. Accordingly, either the Plaintiffs lack standing to prosecute the Action or the Court lacks subject matter jurisdiction to adjudicate the merits of the Action and therefore to issue the injunctive relief requested in the Motion.

**V**

**LIKELIHOOD OF IRREPARABLE HARM**

Even if the Court were to conclude that the jurisdictional deficiencies identified above could be overlooked for purposes of emergency relief, Plaintiffs have failed to establish the second gateway factor: a likelihood of irreparable harm in the absence of preliminary relief.

A. No Imminent Foreclosure Sale

The evidentiary record establishes that no foreclosure sale is currently scheduled for July 8, 2026, or any other date. On July 1, 2026, the foreclosure trustee Sid Richman confirmed in writing that "there is no sale scheduled for July 8" and that "if a new date of sale is to be scheduled you will receive the required proper notice." Gabriel acknowledged this confirmation, responding "Thank you, Sid."  On July 2, 2026, Sunflower's counsel confirmed

the same, responding to a direct inquiry from Plaintiffs' counsel with the following, "As stated by Mr. Richman, there is not currently a scheduled sale date."

Plaintiffs filed their Motion on July 8, 2026—six days after receiving written confirmation that no sale was scheduled—yet represented to this Court that a foreclosure sale was "currently scheduled for July 8, 2026." This representation is irreconcilable with the contemporaneous written confirmations from both the foreclosure trustee and Sunflower's counsel.  Courts impose a heightened duty of candor on parties seeking emergency ex parte relief. Material misrepresentations can result in denial of relief, sanctions, or adverse credibility findings. Here, Plaintiffs and their counsel received unambiguous written confirmation—acknowledged in writing by Gabriel himself—that no sale was scheduled, yet filed an emergency motion asserting the opposite.

If no sale is currently scheduled, and California law requires minimum 21-day notice after recordation of a new notice of sale, Plaintiffs need not have resorted to the Court's emergency motion procedure in an effort to bring this matter before the Court.  There is no emergency justifying the extraordinary relief of a temporary restraining order issued on less than 48 hours' notice.

B.    Availability of Refinancing

Even if a foreclosure sale were imminent, Plaintiffs have not established that the harm is truly irreparable. Plaintiffs represent that they possess a refinancing commitment from RYS Capital for $2,940,000 at 70% loan-to-value based on a $4,200,000 appraised value. This commitment, if viable, would allow Plaintiffs to pay Sunflower's lawful claim in full and avoid foreclosure entirely. The existence of a refinancing option suggests the harm is remediable through financial means rather than truly irreparable.

The RYS Capital term sheet is dated May 25, 2026—over six weeks before this Motion was filed. If Plaintiffs truly possessed viable refinancing in late May, the question arises why they waited until July 8 to seek emergency relief rather than closing the refinancing and paying off Sunflower voluntarily. The term sheet contains conditions precedent including investor approval, appraisal, and payoff of existing liens, with no evidence these conditions have been

satisfied. So is this financing truly viable and imminent or have the Plaintiffs again "played fast and loose" with the factual representations that they have made to this Court?

The Court does not question Plaintiffs' sincere desire to retain their family home of approximately twenty years. Loss of a primary family residence can constitute irreparable harm. But the irreparable harm factor requires a showing that the harm is *likely* and *imminent*, not speculative. Here, there is no impending foreclosure date and Plaintiffs claim to have viable refinancing alternatives, which, if pursued diligently, could avoid foreclosure altogether.

C.    Timing and Delay

Plaintiffs' own delay undermines their showing of urgency. The loan closed on March 4, 2022—over four years ago. Gabriel filed a verified complaint in state court on May 6, 2024, alleging the same TILA, HOEPA, fraud, and wrongful foreclosure theories now asserted in the Action.  He then settled those claims through the August 2024 Settlement Agreement. He filed bankruptcy on May 15, 2025. The Court approved the Trustee's stipulation with Sunflower for relief from stay on April 22, 2026. Plaintiffs filed their first emergency motion on June 12, 2026, which this Court denied on procedural grounds on June 15, 2026.   Plaintiffs have known of the potential foreclosure for over two years, as the Notice of Default was recorded on February 13, 2024. They have been aware of the legal theories underlying their claims since at least May of 2024, when Gabriel filed the verified state court complaint.

Gabriel has personally appeared in Bankruptcy Court on at least two occasions since April of 2026 and the Court explained to him on both occasions that, in order to obtain injunctive relief, Plaintiffs would need to commence an adversary proceeding.  Yet they waited until July 8, 2026—the very date on which they represent (falsely) that there will be a foreclosure sale—to file the adversary proceeding and renew their emergency motion.  This pattern of delay is inconsistent with a genuine emergency requiring relief on 48 hours' notice.

D.    Conclusion on Irreparable Harm

For the foregoing reasons, the Court concludes that Plaintiffs have failed to establish a likelihood of irreparable harm in the absence of preliminary relief. The evidentiary record demonstrates that no foreclosure sale is currently scheduled; that Plaintiffs have viable

refinancing alternatives; and that Plaintiffs' own delay negates any claim of emergency. Failure to establish this gateway factor independently precludes the emergency relief requested.

## VI

## LIKELIHOOD OF SUCCESS ON THE MERITS

Even if the Court were to overlook the jurisdictional deficiencies and the absence of imminent irreparable harm, Plaintiffs face substantial obstacles to establishing a likelihood of success on the merits of their claims.

A.    TILA Rescission: Expired Three-Year Period

Plaintiffs contend they hold an accrued and unexercised right of rescission under 15 U.S.C. § 1635(a), which has not expired because the required TILA disclosures were not made at consummation. TILA grants borrowers the right to rescind certain loans secured by the borrower's principal dwelling until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required by the Act, whichever is later. 15 USCS § 1635 This regime grants borrowers an unconditional right to rescind for three days; thereafter, they may rescind only if the lender failed to satisfy disclosure requirements. Jesinoski v. Countrywide Home Loans, Inc., 574 U.S. 259 (2015).  Even if a lender never makes required disclosures, the right of rescission expires three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.  Id.

The Supreme Court has held that this three-year period "completely extinguishes the right of rescission at the end of the 3-year period." Beach v. Ocwen Fed. Bank, 523 U.S. 410 (1998).  A borrower exercises the right to rescind by providing written notice to the lender; no lawsuit filing is required within the three-year period. A borrower need only provide written notice to a lender in order to exercise his right to rescind. Jesinoski, supra.

Here, the loan closed on March 4, 2022. The three-year rescission period expired on March 4, 2025—over fifteen months before this adversary proceeding was filed on July 8, 2026. Plaintiffs provide no evidence that they sent written rescission notice to Sunflower at any time, much less within the three-year statutory window. Plaintiffs argue that rescission rights

remain viable because required disclosures were never made. A failure to make the required disclosures extends the duration of the rescission period to three years rather than three days, but it does not eliminate the three-year outer limit. The statute is unambiguous on this point: the right "shall expire" three years after closing, regardless of disclosure failures. <u>Beach</u>, <u>supra</u>. Plaintiffs cite no authority, and the Court is aware of none, permitting rescission beyond the three-year statutory deadline in the absence of timely written notice. The Supreme Court's decision in <u>Jesinoski</u> makes clear that providing notice is all a borrower must do—no lawsuit filing is required—but notice itself remains mandatory. Plaintiffs do not allege that they sent the required rescission notice within the statutory window.  Accordingly, Plaintiffs' TILA rescission claim is time-barred, and they cannot establish a likelihood of success on this theory.

        B.    <u>HOEPA Voidness: Lack of Expert Evidence</u>

Plaintiffs' alternative theory contends that specific loan terms are void *ab initio* under HOEPA's categorical prohibitions, independent of any rescission election. They argue that, if the loan qualifies as a "high-cost mortgage" under HOEPA, 15 U.S.C. § 1602(bb) and 12 C.F.R. § 1026.32(a), then the 24% default interest rate, 10% late fees, balloon payment, and prepayment penalty are void by operation of law.

Plaintiffs face two obstacles to establishing likelihood of success on this theory. First, they must establish that the loan qualifies as a "high-cost mortgage" under HOEPA. This requires calculation of the APR under Regulation Z, 12 C.F.R. § 1026.32, which involves complex financial analysis including determination of finance charges, loan term, payment schedule, and comparison to average prime offer rates published by the Consumer Financial Protection Bureau at the time of origination. Such calculations typically require expert testimony from a qualified financial analyst.

Plaintiffs provide no expert report or affidavit from a qualified financial expert. Attorney Roger N. Golden opines in his declaration that the loan "is a 'high-cost mortgage' under HOEPA" because "its annual percentage rate exceeded the average prime offer rate by more than 8.5 percentage points at the time of origination." However, he provides no supporting

calculation, no reference to applicable CFPB rate tables for March 2022, no methodology, and no foundation for this opinion.

Mr. Golden may be an experienced litigation attorney, but he has not demonstrated that he has the qualifications necessary to serve as a TILA expert, appraiser, or financial analyst. His opinions constitute legal conclusions rather than factual testimony admissible under Federal Rule of Evidence 701 or expert testimony admissible under Rule 702. Without expert testimony establishing that the loan meets HOEPA's technical coverage requirements, Plaintiffs cannot make a prima facie showing that the loan is a "high-cost mortgage" subject to HOEPA's categorical prohibitions.

Second, even assuming HOEPA coverage could be established, the question whether the statutory prohibitions render loan terms void *ab initio* or merely voidable presents a question of statutory construction on which Plaintiffs cite no controlling authority. The statutory text states certain terms "shall not be included" or a loan "may not contain" specified provisions. 15 USCS § 1639.  Whether this language creates automatic voidness or requires affirmative assertion by the borrower is an issue that Plaintiffs have not adequately briefed. Accordingly, Plaintiffs have not established a likelihood of success on their HOEPA voidness theory.

C.    The Settlement Agreement

Perhaps the biggest obstacle to Plaintiffs' ability to show that they have a strong likelihood of success on the merits is the fact that Gabriel released all of the claims that he is now attempting to assert in the August, 2024 Settlement Agreement, which he executed after filing a verified complaint alleging the same TILA, HOEPA, and fraud theories now asserted in the Adversary Complaint. The Settlement restructured payment terms, reduced the interest rate to 9.5%, and provided for conditional maturity extensions. It contained a general release of the very claims he now seeks to assert. Gabriel Guerrero was represented by counsel when signing the Settlement.

Plaintiffs argue the Settlement was procured by "economic duress" and cannot cure an illegal loan. Under California law, a settlement or release is unenforceable due to duress where

it is the product of a *wrongful act* sufficiently coercive to cause a reasonably prudent person, faced with no reasonable alternative, to succumb to the perpetrator's pressure. However, financial pressure and threat of lawful foreclosure do not typically constitute actionable duress. Plaintiffs must show the threatened foreclosure was itself wrongful—which requires establishing the underlying loan's illegality, creating circular reasoning.

Additionally, while TILA provides that its protections "cannot be waived," courts have enforced settlement agreements resolving TILA claims where borrowers received consideration and were represented by counsel. Here, Gabriel was represented by counsel, filed the verified complaint demonstrating awareness of his claims, and then voluntarily settled. The Settlement provided consideration in the form of reduced interest rates, payment restructuring, and avoidance of immediate foreclosure.  And Plaintiffs accepted the benefits produced by the Settlement Agreement, clearly ratifying the enforceability of that agreement even after the alleged duress (that is, the threat of an impending foreclosure) had passed.

Gabriel also notes that the co-plaintiff Olivia did not sign the Settlement Agreement, presumably contending that, therefore, she did not release her claims.  However, it is far from clear that she ever had standing to assert any claims.  She was not an obligor on the Sunflower Loan and, perhaps for this reason, was not a plaintiff in the state court action. Moreover, Gabriel expressly represented in the Settlement Agreement that he was the only holder of the claims that were being released and that he was unaware of any other party who held an interest in such claims.

The Settlement Agreement presents a formidable barrier to Plaintiffs' claims. Courts disfavor post-settlement attempts to revive released claims absent clear evidence of fraud, mutual mistake, or unconscionability, none of which have been demonstrated here.

D.   Conclusion on Likelihood of Success

For the foregoing reasons, the Court concludes that Plaintiffs have failed to carry their burden of proof on this factor.  The TILA rescission claim is time-barred; the HOEPA voidness theory lacks expert foundation; and the Settlement Agreement presents a formidable defense. Plaintiffs cannot establish on these facts that they are more likely than not to succeed on the

merits of their claims or even that there is a substantial likelihood that they would be able to prevail on the merits of these claims.

## VII

## BALANCE OF THE EQUITIES AND PUBLIC INTEREST

Even if Plaintiffs could establish likelihood of success and irreparable harm, the balance of equities and public interest factors do not favor emergency relief.  Sunflower has held a first-priority lien since March 2022—over four years. During this period the loan has been in default, Plaintiffs filed bankruptcy, and Sunflower obtained relief from stay to permit foreclosure through a court-approved stipulation. Sunflower has statutory and contractual rights to foreclose, and delay imposes genuine costs including foregone interest, continued exposure to market fluctuations, and administrative expenses.

Debtors seek to forestall foreclosure indefinitely while litigating claims they could have raised (and did in fact raise **and settle**) years ago. The balance of equities does not favor a borrower who defaulted, released the claims he now seeks to prosecute, agreed not to file bankruptcy, agreed that the lender would be entitled to relief from stay if he did, filed bankruptcy and then manufactured an emergency based on a non-existent sale date.

The public interest in enforcing consumer protection laws is genuine. However, courts also recognize a public interest in favor of the finality of contracts, enforcement of secured debt, and efficient bankruptcy administration. When a borrower has defaulted, filed bankruptcy, and the lender has obtained relief from stay, the public interest in permitting lawful foreclosures to proceed must be weighed against the interest in remedying alleged lending violations. Additionally, the public interest disfavors manufactured emergencies and misrepresentations to courts.

## VIII

## CONCLUSION

For the foregoing reasons, Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction is DENIED.

**IT IS SO ORDERED.**

# # #

Date: July 10, 2026

Sheri Bluebond
United States Bankruptcy Judge